IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| REAL ESTATE EDGE, LLC, | § | |
| Plaintiff, | § § § | |
| v. | § | 1:17-CV-1093-RP |
| RODNEY CAMPBELL, | § § § | |
| Defendant. | § § | |

## ORDER

Before the Court is Plaintiff Real Estate Edge, LLC's ("Real Estate Edge") Motion for Entry of Default Judgment. (Mot. Default J., Dkt. 17). Having considered the motion, the record, and applicable law, the Court finds that the motion should be granted.

## I. BACKGROUND

Real Estate Edge alleges the following facts in its complaint. (Compl., Dkt. 1). Real Estate Edge provides real estate brokerage services under the registered trademark, Greater Austin Realty. (*Id.* ¶¶ 6–7). Defendant Rodney Campbell ("Campbell") is the registrant and operator of the Internet domain name "greateraustinrealty.com." (*Id.* ¶ 12). Real Estate Edge alleges that Campbell's operation of this domain name is an act of cybersquatting intended to erode the distinctiveness of Real Estate Edge's Greater Austin Realty mark. (*Id.* ¶¶ 1, 14).

Real Estate Edge filed its complaint on November 11, 2017. (Compl., Dkt. 1). On November 30, Real Estate Edge moved the Court to authorize it to serve Campbell by publication. (Mot. Alt. Serv., Dkt. 4). In its motion, Real Estate Edge stated that it had previously attempted to serve cease-and-desist letters on Campbell but was unsuccessful because Campbell did not maintain a regular place of business and his current residence was unknown. (*Id.* at 1–2). Real Estate Edge

1

went so far as to hire a private investigator to locate Campbell, but the private investigator was unsuccessful. (Dkt. 4-2). The Court granted Real Estate Edge's motion on January 2, 2018. (Dkt. 5).

On May 25, 2018, Real Estate Edge moved the Court for an entry of default against Campbell. (Dkt. 15). The motion was accompanied by a sworn affidavit by Charles A. Moster, Real Estate Edge's counsel, attesting that pursuant to the Court's order authorizing service by publication, Real Estate Edge had published the information contained in the summons to Campbell once a week for four consecutive weeks. (Moster Aff., Dkt. 15-1, at 2). Campbell did not timely respond to the summons against him. The Clerk entered default against Campbell on May 25, 2018, (Dkt. 16), and the instant motion for default judgment followed on July 10, 2018, (Mot. Default J., Dkt. 17). As of today, Campbell has not appeared in this litigation.

## II. LEGAL STANDARD AND DISCUSSION

Under Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant that has failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(a)–(b). That said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment simply because the defendant is in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). Rather, a default judgment is generally committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

In considering Real Estate Edge's motion, the Court must determine: (1) whether default judgment is procedurally warranted, (2) whether Real Estate Edge's complaint sets forth facts sufficient to establish that it is entitled to relief, and (3) what form of relief, if any, Real Estate Edge should receive. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381,

2

384 (W.D. Tex. 2008); *see also J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015) (using the same framework).

### A. Procedural Requirements

To determine whether entry of a default judgment is procedurally warranted, district courts in the Fifth Circuit consider six factors: "[1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion." *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Every *Lindsey* factor weighs in favor of entering a default judgment against Campbell. Because Campbell has failed to file a responsive pleading, there are no material facts in dispute. *J & J Sports*, 126 F. Supp. 3d at 814 (citing *Lindsey*, 161 F.3d at 893, and *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact")). Campbell's failure to respond to Real Estate Edge's complaint and failure to appear in this case has prejudiced Real Estate Edge's interest in pursuing its claims for relief. *Id.* ("Defendants' failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests.") (citation and quotation marks omitted). The grounds for default are established: Campbell has still not appeared in this case. There is no evidence before the Court that Campbell's default was caused by a good faith mistake or excusable neglect, and the harshness of a default judgment in this case is mitigated by Campbell's failure to respond to Real Estate Edge's complaint or otherwise appear in the last fourteen months. *Id.*; *Epic Tech, LLC v. Lara*, 2017 U.S. Dist. LEXIS 196705, at * 12 (S.D. Tex. Nov. 29, 2017). Finally, the Court is not aware of any facts that would obligate it to set aside the default if challenged by Campbell. The Court therefore finds that default judgment is procedurally warranted.

**B. Sufficiency of Real Estate Edge's Complaint**

Default judgment is proper only if the well-pleaded factual allegations in Real Estate Edge's complaint establish a valid cause of action. *Nishimatsu*, 515 F.2d at 1206. By defaulting, a defendant "admits the plaintiff's well-pleaded allegations of fact." *Id.* In determining whether factual allegations are sufficient to support a default judgment, the Fifth Circuit employs the same analysis used to determine sufficiency under Rule 8. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten*, 788 F.3d at 498 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While "detailed factual allegations" are not required, the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Real Estate Edge asserts three causes of action against Campbell: (1) cybersquatting under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d); (2) false designation of origin under 15 U.S.C. § 1125(a); and (3) federal trademark infringement under 15 U.S.C. § 1114. The Court addresses the sufficiency of Real Estate Edge's allegations for each cause of action in turn.

<u>1. Cybersquatting</u>

Under the ACPA, a person is liable for "cybersquatting" "if, without regard to the goods or services of the parties, that person: (i) has a bad faith intent to profit from that mark, . . . ; and (ii) registers, traffics in, or uses a domain name that—(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark." 15 U.S.C. § 1125(d)(1)(A).

4

Real Estate Edge alleges that it owns the registered trademark, Greater Austin Realty; that this mark was filed on October 10, 2006; and that it was registered on August 14, 2007. (Compl., Dkt. 1, ¶¶ 7–8). Real Estate Edge has submitted proof of registration of its mark with the Patent and Trademark Office ("PTO"). (Dkt. 1-1). "[P]roof of the registration of the mark with the PTO constitutes prima facie evidence that the mark is valid and that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010); 15 U.S.C. §§ 1057(b) & 1115(a).

Real Estate Edge further alleges that the Greater Austin Realty mark is inherently distinctive and is used by customers to identify Real Estate Edge's services, (*id.* ¶¶ 9–10), and that Campbell operates the "commerce related domain www.greateraustinrealty.com," (*id.* ¶ 12).[1] Although Real Estate Edge does not specifically allege that this domain name "is identical or confusingly similar to" the Greater Austin Realty mark, federal courts routinely recognize that "domain names that are substantially the same as a trademark are confusingly similar and create a presumption of confusion." *US Green Bldg. Council, Inc. v. Wardell*, 2016 U.S. Dist. LEXIS 89457, at *15–17 (N.D. Tex. June 17, 2016) (citing *Texas Int'l Prop. Assocs. v. Hoerbiger Holding AG*, 624 F. Supp. 2d 582, 588 (N.D. Tex. May 12, 2009) (collecting cases)).[2] Real Estate Edge also alleges that its mark was distinctive before Campbell registered the allegedly infringing domain name; that Campbell's website diverted customers from Real Estate Edge's website by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the website; and that Campbell acted intentionally and in bad faith. (Compl., Dkt. 1, ¶¶ 14, 18, 20, 22); *see MetroPCS v. Mohammed*, 2017 U.S. Dist. LEXIS 91447, at *23 (N.D. Tex. Apr. 24, 2017) (observing that district courts in this circuit have held that defendants are deemed to have admitted to acting knowingly and intentionally

---

[1] Whether a mark is inherently distinctive is a question of fact. *Amazing Spaces*, 608 F.3d at 234.
[2] The Court may infer this allegation from Real Estate Edge's complaint. *See Wooten*, 788 F.3d at 499 (stating that a complaint need not "explicitly include every element of the plaintiff's prima facie case to satisfy Rule 8," and the elements of a cause of action may be "present by implication").

by virtue of a default) (citing *Neutron Depot, LLC, v. Bankrate, Inc*., 2016 WL 215544, at *4 (S.D. Tex. Jan. 19, 2016); *Sculpt Inc. v. Sculpt New York, LLC*, 2015 WL 6690224, at *5 (S.D. Tex. Nov. 3, 2015)).

In light of these allegations, the Court finds that Real Estate Edge's complaint is "well-pleaded" for default-judgment purposes. *Wooten*, 788 F.3d at 500. Like the complaint in *Wooten*, Real Estate Edge's allegations "are not so vague that [Campbell] lacked notice of the contours of" the claims against him, and "all elements of the cause of action are present by implication." *Id.* at 499.

### 2. False Designation of Origin

The same result follows for Real Estate Edge's false designation of origin claim. (Compl., Dkt. 1, ¶¶ 26–27). Under 15 U.S.C. § 1125(a), a person is liable for the use in commerce of, *inter alia*, "any word, term, [or] name, . . . , or any false designation of origin, . . ., which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." Real Estate Edge incorporates all the above-cited facts into its false designation of origin claim. The Court finds that this claim is also well-pleaded for default-judgment purposes for the same reasons as Real Estate Edge's ACPA claim. *See Wooten*, 788 F.3d at 500.

### 3. Federal Trademark Infringement

Finally, Real Estate Edge claims that Campbell has intentionally and willfully infringed Real Estate Edge's Greater Austin Realty mark in violation of 15 U.S.C. § 1114. (Compl., Dkt. 1, ¶¶ 28–32). To succeed in a trademark infringement claim, Real Estate Edge must (1) "establish ownership in a legally protectable mark" and (2) "show infringement by demonstrating a likelihood of confusion." *Amazing Spaces*, 608 F.3d at 235–36. Real Estate Edge incorporates all the factual allegations discussed above into its trademark infringement claim. As before, the Court finds that this claim is "well-pleaded" for default-judgment purposes. *Wooten*, 788 F.3d at 500.

In sum, Real Estate Edge has pleaded sufficient facts to support the entry of a default judgment against Campbell with respect to all its claims.

## C. Relief

Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In other words, the relief prayed for in a complaint defines the scope of relief available on default judgment. *Id.*

A defendant's default concedes the truth of the allegations of the complaint concerning the defendant's liability, but not damages. *United States v. Shipco Gen. Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, when the amount of damages or costs can be determined with certainty by reference to the pleadings and supporting documents, and when a hearing would not be beneficial, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). A sum capable of mathematical calculation is one that can be "computed with certainty by reference to the pleadings and supporting documents alone." *Id.* at 311.

In its motion, Real Estate Edge seeks entry of a default judgment that Campbell's actions constitute cybersquatting in violation of the ACPA, 15 U.S.C. § 1125(d); unfair competition and false designation of origin in violation of 15 U.S.C. §1125(a); and trademark infringement in violation of 15 U.S.C. § 1114. (Mot. Default J., Dkt. 17, at 6–7). Real Estate Edge also requests that the Court permanently enjoin Campbell from further infringing its trademark. (*Id.* at 8). Finally, Real Estate Edge requests an order that Campbell "(1) relinquish all rights in the Internet Domain Name, www.greateraustinrealty.com, and direct GoDaddy.com, LLC, or any other party in position to do so, to transfer the internet domain name to [Real Estate Edge]; (2) pay costs incurred in prosecuting

7

this action; and (3) pay [Real Estate Edge's] attorney's fees under 15 U.S.C. [§] 1117." (*Id.* at 7). None of the requested relief referenced here differs in kind from or exceeds the relief requested in Real Estate Edge's complaint. (*See* Compl., Dkt. 1, at 6–8).[3]

For the reasons already discussed, the Court finds that Campbell, by virtue of his default, is liable to Real Estate Edge for violations of 15 U.S.C. § 1114, 15 U.S.C. §1125(a), and 15 U.S.C. §1125(d). *Shipco*, 814 F.2d at 1014 (a defendant's default concedes the truth of the allegations of the complaint concerning the defendant's liability). The Court will now assess whether Real Estate Edge is entitled to the specific relief requested.

### 1. Injunctive Relief

Real Estate Edge seeks a permanent injunction enjoining Campbell from further infringing its trademark. (Mot. Default J., Dkt. 17, at 8). A permanent injunction for violations of the Lanham Act is appropriate if the plaintiff can prove "(1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury to the plaintiff outweighs any damage to the defendant; and (4) that the injunction will not disserve the public interest." *US Green Bldg. Council*, U.S. Dist. LEXIS 89457, at *11 (citing *Playboy Enters., Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999)).

Courts in the Fifth Circuit "have acknowledged that default against a defendant is tantamount to actual success on the merits and that a permanent injunction may be issued as part of a default judgment." *U.S. Green Bldg. Council,* 2016 U.S. LEXIS 89457, at *11; *see also T-Mobile United States, Inc. v. Shazia & Noushad Corp.*, 2009 U.S. Dist. LEXIS 59014, at *9 (N.D. Tex. July 10, 2009);

---

[3] Real Estate Edge does not seek actual or statutory damages for purposes of its default judgment motion. (Mot. Default J., Dkt. 17, at 6). The Court also notes that in its proposed order submitted with its motion for entry of a default judgment, Real Estate Edge requests prospective attorney's fees in the event that Campbell unsuccessfully appeals a grant of default judgment against him to the Fifth Circuit and United States Supreme Court. (Proposed Order, Dkt. 17-2, at 2). This requested relief, however, does not appear in Real Estate Edge's motion or its complaint. The Court therefore finds that it exceeds the scope of the relief prayed for in Real Estate Edge's complaint, and will not grant it. *See* Fed. R. Civ. P. 54(c).

8

*Twist & Shout Music v. Longneck Xpress, N.P.*, 441 F. Supp. 2d 782, 784-85 (E.D. Tex. 2006). Accordingly, Real Estate Edge has satisfied the first prong for injunctive relief. The second prong is also satisfied: Real Estate Edge "has no other adequate remedy at law because monetary damages will not prevent future infringing activity by [Campbell]." *Id.*; *see also Coach, Inc. v. Trendy Tex., LLC*, 2017 U.S. Dist. LEXIS 171103, at *14-15 (S.D. Tex. Oct. 17, 2017). As for the third prong, requiring Campbell to comply with the law imposes an insignificant harm outweighed by the harm to Real Estate Edge's business in the absence of injunctive relief. *See US Green Bldg. Council*, 2016 U.S. Dist. LEXIS 89457, at *12; *MetroPCS*, 2017 U.S. Dist. LEXIS 91447, at *22. Finally, the fourth prong is satisfied because it is in the public interest to promote adherence to the intellectual property laws. *See Artista Records, Inc. v. Kabani*, 2004 U.S. Dist. LEXIS 7877, 2004 WL 884445, at *4 (N.D. Tex. Apr. 23, 2004).

Accordingly, a permanent injunction is an appropriate remedy in this case upon entry of a default judgment.

<u>2. Domain Name Transfer</u>

Real Estate Edge also requests that Campbell relinquish all rights in the domain name, www.greateraustinrealty.com, and that this domain name be transferred to Real Estate Edge. The ACPA provides for the remedy of a domain name transfer. 15 U.S.C. §1125(d)(1)(C) ("In any civil action involving the registration, trafficking, or use of a domain name under this paragraph, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark."); *see also E. & J. Gallo Winery v. Spider Webs Ltd.*, 129 F. Supp. 2d 1033, 1047 (S.D. Tex. Jan 29, 2001), *aff'd*, 286 F.3d 270, 278 (5th Cir. 2002).

As previously discussed, federal courts recognize that domain names identical to a trademark are confusingly similar to that mark and thus create a presumption of confusion. *Texas Int'l Prop. Assocs.*, 624 F. Supp. 2d at 588. Also previously discussed, courts in the Fifth Circuit have held that

defendants are deemed to have admitted to acting knowingly and intentionally by virtue of a default. *See MetroPCS*, 2017 U.S. Dist. LEXIS 91447, at *23; *Neutron Depot,* 2016 U.S. Dist. LEXIS 5795, 2016 WL 215544, at *4; *Sculpt Inc.*, 2015 WL 6690224, at *5. Because the domain name, www.greateraustinrealty.com, is identical to and therefore confusingly similar to Real Estate Edge's Greater Austin Realty mark, and because Campbell is deemed to have acted knowingly and intentionally in infringing that mark, the Court finds that transfer of the domain name, www.greateraustinrealty.com, to Real Estate Edge is appropriate. *US Green Bldg. Council*, 2016 U.S. Dist. LEXIS 89457, at *17.

### 3. Fees and Costs

Finally, Real Estate Edge seeks attorneys' fees under 15 U.S.C. § 1117, as well as costs. (Mot. Default J., Dkt. 17, at 8; Mot. Att'y Fees, Dkt. 18, at 1). Attorney's fees are available under 15 U.S.C. § 1117 only in "exceptional cases." 15 U.S.C. § 1117(a). The Fifth Circuit has stated that such "exceptional cases" are ones "in which the defendant's trademark infringement can be characterized as malicious, fraudulent, deliberate, or willful." *T-Mobile*, 2009 U.S. Dist. LEXIS 59014, at *11 (citing *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992)).

Here, Campbell's infringement of Real Estate Edge's mark can be characterized as deliberate or willful because, by virtue of his default, he is deemed to have admitted to knowingly and intentionally infringing Real Estate Edge's trademark. *US Green Bldg. Council*, 2016 U.S. Dist. LEXIS 89457, at *17–18; *Neutron Depot,* 2016 WL 215544, at *4. Real Estate Edge is therefore entitled to attorney's fees under 15 U.S.C. § 1117.

The Court may award fees and costs in this case without a hearing because they can be calculated with certainty solely by reference to the affidavit and invoices submitted by counsel for Real Estate Edge. The Fifth Circuit has described the procedure and standard for determining attorney's fees as "a two-step process. First the court calculates the 'lodestar' which is equal to the

number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)." *Smith v. Acevedo*, 478 Fed. App'x. 116, 124 (5th Cir. 2012) (citation omitted). The *Johnson* factors are the (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

In its motion for default judgment, Real Estate Edge requests $12,300.00 in attorney's fees and $1,056.40 in costs. (Moster Aff., Mot. Default J., Dkt. 17-1, at 2). Real Estate Edge's counsel filed as evidence invoices summarizing the hours worked, the applicable hourly rates, and the costs incurred. (Moster Aff., Mot. Att'y Fees, Dkt. 18-1, at 7–12). Those invoices show that counsel's firm billed 49.2 hours at a rate of $250 per hour. (*Id.* at 2, 7–11). The invoices also show that Real Estate Edge's counsel incurred $1,056.40 in costs. (*Id.* at 12). The Court is satisfied that the requested attorney's fees are reasonable and declines to adjust them.

## III. CONCLUSION

For the reasons given above, the Court **GRANTS** Real Estate Edge's Motion for Entry of Default Judgment (Dkt. 17). The Court will enter final judgment in a separate order.

**SIGNED** on February 21, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE